Mr. I want to make sure I pronounce the name correctly. Is it Yort or? Yort. Oh, Mr. Yort. Okay. One of them is either the H or the J. It's silently treated like a Y, right? Yes, exactly. Okay. All right. You can, Judge Ray will be back shortly, but you can begin your argument whenever you're ready. Okay. Good morning, Your Honors, and may it please the court. I just have a few initial points that I'd like to get in. The first, the main point of this appeal is that the district court placed my client in an untenable position when he allowed his counsel to withdraw two months before the trial and then dismissed the case when no new counsel would appear. Okay. We filed motions for reconsideration- You're referring to the October 06 order? Yes. Well, the withdrawal was in August of 06. But the order dismissing was in October, right? The end of September, yes. Yes. And we have filed motions for reconsideration of that and clearly erroneous fact that goes back to that withdrawal that my client had secured alternate counsel, which was not true in the withdrawing attorney's motion to withdraw. Mr. Giglio had never been retained- Mr. Giglio is almost like a sort of an eminence grise in this case, sort of behind the scenes in a way, almost calling the shots. I mean, he's not counsel yet he says, I'm available. That gets conveyed. Parties in the court react to that. Then it goes back. It's a little bit of an odd dance that was going on here. It is an odd dance. Mr. Levy wanted to get out of the case. And so he asked my clients to try to find substitute counsel, which Mr. Giglio was the person who was identified for a very complicated trial schedule and had a shifting trial schedule, especially with that RICO case that he points to that's in the record. And so I think Mr. Levy got ahead of himself and decided that he had had enough and was going to be out. So he told the trial court that this was all set when in fact it wasn't all set. Mr. Short, why is there a five-year delay after this court remands a second time? Your Honor, I do not know the answer to that question. It was sent back to the court and Judge Bell let it sit for five years. Well, I'm not sure the blame belongs to the court. Did the parties make any effort to bring the issues to his attention? I believe that, well, there was a pending motion for summary judgment at the time that it was remanded, which was never ruled on. And there was also, I believe that... Did you file any other motions during that period of time? No. The motion was from the defendants on the summary judgment on non-infringement. Mr. York, when did you come into the case? My firm has been retained just for the purposes of this appeal. That's right. Yeah, I remember that in the briefs. Getting back to the five-year delay, I believe that the attorneys tried to contact the judge's law clerks and tried to get some movement on the case, but there was nothing. And I can say, I don't think anybody wanted to call the judge up and say, why has nothing been done that might be viewed antagonistically by him? I don't think that we wanted to be viewed as being antagonistic to him. And so we were waiting for his activity, which never came. What activity? Well, I guess the next step would be the scheduling of the trial, which was what happened when... So you could have asked to have the trial scheduled. I mean, that wouldn't be insulting, would it? No, no, that wouldn't be considered insulting. But, well, then there was also the motions that had that summary judgment motion that was pending, which hadn't been ruled on. Well, that happens, right? Sometimes summary judgment motions are decided on the eve of the trial. This is true. But your problem, it seems to me, in particular, is that we have to view this as a Rule 60B motion, and you agree with that, and that is an appeal from the Rule 60B motion. I agree that the second motion for reconsideration is a Rule 60B motion, yes. Okay, and the way I look at the record, particularly at A73, and I see this order by Judge Bell, and what seems to me he's saying is, okay, you finally got counsel, but he hasn't gotten himself admitted to our court, despite a couple of notices to that effect. And why isn't that a perfectly good reason for refusing to reopen this? Well, that order, the order of March 2007 on A73 is not the order that's appealed from, it is the order that's on, that's later. The oldest order? The February 25, 2008 order on Joint Appendix 87. But I do want to address Mr. Giglio's lack of... That's just you asking to reopen it. Right. But that really refers back to the motion that Judge Dyke referred us to, right? It is essentially the same motion, yes. It's the same motion, and the judge said, you don't even have counsel yet that can appear in my court. That was definitely a, I don't think that's dispositive that Mr. Giglio failed to get himself enrolled in the Western District of Michigan. Well, it seemed to concern Judge Bell. I agree, it's... And was that inappropriate for him to be concerned that this had, you know... I can't defend Mr. Giglio on that point, that he should have been enrolled in the Western District of Michigan before filing motions out there. However, I think that the, well, we need to focus on the... Was it an abuse of discretion is the issue to deny the motion? Yes. And it's hard to see how it was, given that we're only reviewing the denial of the motion for reconsideration. Well, I think the circumstances that we've been discussing... This is true. I think it goes back to the lack of consideration that was given to my client by allowing this... The position he was in was a catch-22. He couldn't get new counsel because it was too close to the trial date, and... Well, this is Sixth Circuit law, and the Sixth Circuit has said at one point, a party may not use the Rule 60B motion as a substitute for a timely appeal. There's no timely appeal here. Why don't we just follow what the Sixth Circuit said? I think that the appeal of this motion is a timely appeal. I can see that I'm not appealing the initial dismissal of the case, the September of 2006 order. The appeal... There is a timely appeal, but it is limited to the motion for reconsideration. And it is an abuse of discretion standard. Thank you, Mr. Hjort. You want to say the rest of your time? Yes, I'll say the rest of my time. Thank you. Mr. Graham. Good morning, Your Honor. May it please the Court. The fundamental question I think was touched upon by Judge Rader at the end, which is, as a 60B6 motion, the Court should first examine what issues are available for review here. And those issues are confined to the denial of the motion for reconsideration and the issues that it raised, not the merits of the underlying order of dismissal of the case. You don't have to look very deep into the motion for reconsideration to understand why it was dismissed and why it was denied. The motion itself raises no defect. It doesn't complain that there was an error of law made in dismissing the case. Their opening brief on behalf of Lenka raises a number of issues under the Harris case that it says the Court should have visited upon before it dismissed the case, but none of those were raised in the court below. You're saying those would have been properly raised if there had been an appeal back in October or November of 2006 or if there had been a timely motion for reconsideration and then an appeal from that. Certainly in the first appeal, if timely, in a motion for reconsideration, I suppose it's a matter of debate whether those arguments would have been proper if raised below in the first instance, because then we have to look at the question of whether those arguments themselves create a clear and convincing case of exceptional and extraordinary circumstances. If you look at what was in the motion for reconsideration itself, it is literally nothing but an almost verbatim repeat of Mr. Burrard-Curdy's response to the motion to dismiss in the first place. In our opening brief, we responded that this was all new. In accordance with the Court's jurisprudence, it shouldn't visit in the first instance on these issues not having been raised below. In the reply brief, what Lenko argues is that there was a palpable defect identified in the motion for reconsideration, that being the identification of a misrepresentation that had been presented. If that's the one issue, there are a number of problems with that so-called palpable defect. Of course, one is that there was no misrepresentation at all. There are at least four instances in which Mr. Burrard-Curdy or Mr. Giglio told the Court that he had, in fact, agreed to take the case if it had been moved to the fall, and that's what the Court did based on that correct representation. The only thing that happened I don't think rises to the level of misrepresentation. It rises, perhaps, to a change in circumstance that no one had informed the Court about and that Mr. Burrard-Curdy had the opportunity to but didn't, which is that Mr. Giglio didn't keep his word and picked up another case, even though he told the Court that his schedule was open. He didn't keep his word? Did he promise not to take another case? If you read the papers, Mr. Burrard-Curdy's and Mr. Giglio's declarations, he said, I said I agreed, his word, agreed to take the case if it had been moved to fall. Yeah, but that doesn't mean that he didn't keep his word. I mean, what it's saying is that there was an intervening event. I'm just, this is neither here nor there as far as the result of the case is concerned. I just think it's a little over the top to say that he didn't keep his word. There seemed to be a change in circumstance there. Fair point, Your Honor. Perhaps it's a matter of debate about whether it was breaking his word or it was simply a change in circumstance. The record doesn't really show the extent of that, and that's probably an attorney-client discussion in any event. But going back to the central point here of what did the district court below have before it in the form of the motion for reconsideration? And did that specific motion present a clear and convincing case of exceptional or extraordinary circumstances? And clearly it didn't. It simply said, as we told you before, I'm not available to take the case, but I will if you move it. And that is certainly not exceptional. That's what's interesting. He's not in the case, yet he's controlling the docket.  Because the declarations of Mr. Berardicurti and the ones of Mr. Giglio, when he did become counsel of record, are almost verbatim. They are mirror images, only changing the wording for one signatory and the other, essentially. But in the end of the day, Your Honor, it's neither here nor there, because there is no exceptional circumstance presented. The court was fully aware of all of those facts at the time it dismissed the case. And we would submit that you probably cannot satisfy Rule 60b-6 by simply repeating verbatim the argument that the court had in the first place when it dismissed the case. All of the remaining arguments are new, presented on appeal, and I'll rely on the briefing as to whether they would have presented an exceptional case if presented in the first instance below. The issues on notice and other things under Harris, I think, are satisfied fairly well in the briefing. And as per our agreement, I defer the remaining five minutes to my co-counsel. Mr. Lynn. Thank you, Your Honors. I just want to address one or two questions that were posed by the panel. I really can't say why the court waited five years, but I don't think I need to remind the court of the congressional logjam there was in appointing judicial positions both at the district court and appellate court level. That logjam started in Michigan in the Sixth Circuit. There's five seats for Article III judges in the Western District of Michigan. We were down to two for this entire period. It was only summer of 2007 that they filled those remaining three seats, and that logjam was actually compromised out. They filled all the other seats throughout the country,  During that window, the two active judges and some seniors were busy. So in terms of as a defendant trying to press Judge Bell saying, get this on the docket, we certainly weren't going to be pushing that. But you would need to look at what happened when it did come up. Judge gave him a date, a trial date, and the plaintiff sought more time. There was additional delays. But really, I think Judge Schall's question at the very beginning is the linchpin here. The motion or the appeal here is from the motion for reconsideration, and it's not from the withdrawal motion that put the untenable position, the plaintiff in that position or the dismissal of the case. So those are the issues that we're faced with here today. I think we're pretty well covered on anything else with the exception of any other questions that the panel may have. Thank you, Mr. Lynn. Mr. Hiller, you have over six minutes remaining. You need to use that time. I just want to come back to the palpable defect that was described in the Rule 60 motion. I think that the letter which was attached from Mr. Giglio where he says that he's not been retained, he hasn't made an appearance or anything like that, and that he'd be willing to take it if it could be rescheduled. The judge, Judge Bell, never reconciled those statements with what Mr. Levy had said when he said in his motion to withdraw that Giglio had been retained and would handle the case. It creates difficulties for us. It created difficulties for my client, and it resulted in the dismissal of this case because he couldn't obtain counsel. But that's all I really have. All right. Thank you, Mr. Bjork. Consider it. Thank you. I think that concludes our morning. All rise. The honorable court is adjourned until tomorrow morning at 2 a.m.